UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

JULIA BASILE,

                         Plaintiff,               08 Civ. 7264  (     )

        -against-

ARLENE VALENTINE, individually, TRACI
L. HORWEDEL, individually, WALTER
SPAGNOLA, individually, RAMESH MEHTA,       **FIRST AMENDED**
individually, JOHN L. BUONO, individually,       **COMPLAINT**
MICHAEL R. FLEISCHER, individually,
and the NEW YORK STATE THRUWAY
AUTHORITY,

                                       **Jury Trial Demanded**

               Defendants.

-------------------------------------------------------------x

       Plaintiff JULIA BASILE, by her attorneys Lovett & Gould, LLP, for her first

amended complaint respectfully states:

## NATURE OF THE ACTION

       1. This is an action for compensatory and punitive damages, proximately the

result of conduct engaged in by Defendants while acting in concert under color of New

York State law, for violations of Plaintiff's rights as guaranteed by Title VII, 42 U.S.C.

§2000e *et. seq*, and 42 U.S.C. §1983.

## JURISDICTION

       2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343. With

respect to Plaintiff's Title VII retaliation claims, in <u>Basile v. Spagnola</u>, 07 Civ. 12247

(CS/LMS)(hereinafter "Basile II") Plaintiff has asserted *inter alia* Title VII retaliation on the basis of a Charge of Discrimination (#165-2005-00490) filed with the EEOC on February 2, 2005, which resulted in the issuance of a Notice of Right to Sue by the United States Department of Justice on November 29, 2005. In that connection the Defendant Thruway Authority moved to dismiss the complaint in Basile II on *inter alia* the ground that, even though Plaintiff was claiming retaliation on the basis of the original Charge of Discrimination, she was required to file a new Charge as a condition precedent to filing the Title VII claim. Plaintiff opposed that motion and, by way of alternative defense with respect to the Thruway Authority's argument, duly filed another Charge of Discrimination with the EEOC alleging retaliation. On June 18, 2008, the United States Department of Justice issued another Notice of Right to Sue. With respect to Plaintiff's state law claim, it is interposed in accordance with the Court's supplemental jurisdiction, 28 U.S.C. §1367.

## THE PARTIES

3. Plaintiff JULIA BASILE, a thirty-four year old single mother, is a citizen of the United States, a domiciliary of the State of New York, and a resident of the County of Rockland. At all times relevant to this complaint she has since April 2003 been employed by the New York State Thruway Authority (hereinafter "Authority"), until recently as the only female welder assigned to work on the Tappan Zee Bridge. In 2005 she filed a Title VII and 42 U.S.C. § 1983 civil rights action against the Authority, Defendant Spagnola and other Authority officials/employees by reason of a gender-based hostile work environment. Basile v. Spagnola, 05 Civ. 10699 (LMS)(hereinafter "Basile I"). As

against Defendant Spagnola the case resulted in a jury verdict in the spring of 2007 in the principal sum of $200,000 - - $50,000 of which was punitive damages. In connection with the events set forth *infra* Plaintiff is, and has continuously been drug free - - except for prescribed medications required to be taken as a result of injuries sustained by her due to the sexually hostile work environment and retaliation referenced *infra*.

4. Defendant ARLENE VALENTINE (hereinafter "Valentine"), who is sued in her individual and personal capacities only, at all times relevant to this complaint was employed in the Defendant Authority's Bureau of Personnel as a "Drug and Alcohol Testing Program Coordinator".

5. Defendant TRACI L. HORWEDEL (hereinafter "Horwedel"), who is sued in her individual and personal capacities only, at all times relevant to this complaint was employed in the Defendant Authority's Bureau of Personnel as "Personnel Director".

6. Defendant WALTER SPAGNOLA (hereinafter "Spagnola"), who is sued in his individual and personal capacities only, at all times relevant to this complaint has for years been employed by the Authority as a "Supervising Bridge Painter" assigned to the Tappan Zee Bridge (hereinafter the "Bridge"). As such, and by reason of his seniority and political connections in the Authority, he *de facto* controls: i) the on-the-job conduct of many of the Authority employees, including most of his individually named co-defendants; and ii) many of the workplace activities of the Authority, including the circumstances referenced *infra*. Since Plaintiff's commencement of employment Spagnola, motivated *inter alia* by gender hostile animus, has sexually abused her and *inter alia* stalked her in the workplace. Since the verdict in <u>Basile I</u> he has re-doubled his stalking activities with respect to Plaintiff, which activities continue to date - - all

3

with the knowing consent and/or encouragement and/or reckless disregard of his co-defendants. Spagnola is a Defendant in <u>Basile I</u> and <u>Basile II</u>.

7. Defendant RAMESH MEHTA (hereinafter "Mehta"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the Authority as the Director of the New York Region. He like his individually named co-defendants knowingly and/or intentionally and/or in reckless disregard of the readily foreseeable consequences agreed to and/or affirmatively condoned the retaliatory conduct referenced *infra* motivated by *inter alia* the same animus. Mehta is a Defendant in

<u>Basile II</u>.

8. Defendant JOHN L. BUONO (hereinafter "Buono"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the Chairman of the Defendant Thruway Authority. He is, upon information and belief, personally aware of the events that precipitated the filing/prosecution of <u>Basile I</u> and <u>Basile II</u>, and though empowered to put an end to the gender hostile and Title VII retaliatory work environment which Plaintiff continues to endure, has intentionally and/or in reckless disregard of the readily foreseeable consequences taken no remedial action whatsoever. In that connection he has encouraged, condoned and/or ratified on behalf of the Authority all of that illegal conduct including the conduct set forth *infra*.

9. Defendant MICHAEL F. FLEISCHER (hereinafter "Fleischer"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed as the Executive Director of the Defendant Thruway Authority. He like Buono upon information and belief is personally aware of the events that precipitated the

filing/prosecution of <u>Basile I</u> and <u>Basile II</u>, and, though empowered to put an end to the gender hostile/Title VII retaliatory work environment which Plaintiff continues to endure, has intentionally and/or in reckless disregard of the readily foreseeable consequences taken no remedial action whatsoever. In that connection he, like Buono, has encouraged, and/or ratified on behalf of the Authority all of that illegal conduct including the conduct set forth *infra*.

10. Defendant NEW YORK STATE THRUWAY AUTHORITY (hereinafter "Authority") is a public authority created by and existing pursuant to the laws of the State of New York. The Authority was a named Defendant in <u>Basile I</u> and monitored through its counsel the trial in that action. By reason of <u>Basile I</u> and <u>Basile II</u> the Authority has intentionally encouraged and condoned the individually named Defendants' plan to retaliate against Plaintiff as a proximate result of her: filing of the Charge of Discrimination in 2005; the Department of Justice's ensuing issuance of a Notice of Right to Sue; prosecution of <u>Basile I</u> to a verdict; filing/prosecution of <u>Basile II</u>; filing of the 2008 Charge of Discrimination and the resulting issuance by the Department of Justice of the 2008 Notice of Right to Sue.


## THE FACTS

11. Given the pendency of the Authority's motion to dismiss the Title VII retaliation claim alleged in <u>Basile II</u>, and in light of the Department of Justice's recent issuance of a Notice of Right to Sue, the complaint in <u>Basile II</u> is annexed, incorporated herein, and made a part hereof.

12. In connection with Plaintiff's June 27, 2008, return to work from an injury

Defendants falsely claimed that Plaintiff had been selected for drug testing on a "random" basis supposedly in accordance with the United States Department of Transportation Procedures for Transportation Workplace Drug and Alcohol Testing Programs. As a result of the individually named Defendants' agreement on that date Plaintiff was unlawfully ordered - - under threat of job termination - - to involuntarily submit a urine sample for purposes of drug testing despite the circumstances that: i) she had been selected purposefully and intentionally, not randomly; and ii) there was no factual basis to suspect that she was in any way impaired.

13. As pre-arranged by Defendants, Spagnola was present in the workplace location where Plaintiff, under duress, was ordered to provide a urine sample. By reason of his presence, past history of sexual abuse of Plaintiff, constant stalking of Plaintiff, and contemporaneous threatening demeanor, Plaintiff due to stress/fear was unable to provide the sample as ordered.

14. Under the circumstances Defendants, acting through Valentine, advised Plaintiff that her employment was summarily terminated. Shortly thereafter and for reasons undisclosed Valentine advised Plaintiff that her employment was not terminated.

15. Instead Defendants acting through Valentine ordered Plaintiff to submit to drug testing by Michael Barr, M.D., a urologist. In that connection they deceptively advised Barr in a letter dated July 1, 2008:

> "You have been selected as the referral physician to evaluate
> Julia Basile for the inability to provide a sufficient amount of
> urine for a federally mandated drug test. . . "

6

16. On July 3, 2008, and under duress Plaintiff complied with the Defendants' directive and gave a urine specimen to Barr. Barr then advised the Defendants:

> "After seeing your patient, **Julia Basile** on July 3, 2008 I found
> the following chief complaint and history of present illness:
> She was required to give a specimen under duress. The place she
> was at [*sic.*], was occupied by a person, who she sees as threatening.
> She gave me a specimen without trouble. She will give a
> specimen to LabCorp, a state licensed lab.
>
> An attempt to speak with Dr. Gerson [one of the Authority's
> Medical Review Officer] was blocked by his staff. I can only conclude
> that he does not want to talk to me.
>
> If you want to repeat the test, take her to a legitimate lab
> yourself."

(boldface in original).

17. By correspondence dated August 7, 2008, authored by Valentine on her and her co-defendants' behalves, she advised Plaintiff:

> "Dr. Barr forwarded his evaluation to University Services
> which provides Medical Review Officer (MRO) services to the
> New York Thruway Authority (Authority). Based on Dr. Barr's
> evaluation, MRO Dr. Anu Konakanchi of University Services has
> concluded that you did not have a medical condition that precluded
> you from providing a sufficient amount of urine for your random
> drug test on June 27, 2008. Dr. Konakanchi, therefore, determined

that the status of your June 27, 2008 random drug test is Refusal

to Test. Enclosed is a Drug and Alcohol Violation Notice.

Under the federal regulations, a Refusal to Test requires you to be

removed from safety sensitive duties and not returned to your safety

sensitive duties until you complete a Substance Abuse Professional

(SAP) evaluation and a referral and education/treatment process.

I understand that you are currently on medical leave without pay

for an unrelated issue. However, should you be medically cleared to

return to work from your current medical leave before you complete

the SAP process, you must complete the SAP process before you can

return to work. You will be placed on leave without pay at that time

pending your completion of the SAP process.

The first step in the process is for you to forward a check or money

order payable to the New York State Thruway Authority in the amount

of $315 to Ms. Arlene Valentine. . .to pay for your SAP services. . .".

18. In taking the subject retaliatory actions against Plaintiff Valentine,

Horwedel, Spagnola, Mehta, Buono, Fleischer and the Authority were motivated in

whole and/or in substantial respect to punish Plaintiff for her having: i) filed multiple

Charges of Discrimination with the EEOC; ii) received the original Notice of Right to

Sue and commenced civil rights litigation on the basis of it; iii) prosecuted Basile I to

verdict in connection with which litigation she adduced truthful testimony regarding

at least one crime committed by Spagnola (sexual abuse) and multiple crimes

committed by other Authority employees (smoking marijuana on the job; gambling on

the job; sleeping on the job and receiving compensation for same); filed <u>Basile II</u> in which she in good faith expressed her opinion regarding the commission with impunity of various crimes by Spagnola and other Authority employees/officials including multiple attempts at murder; and *inter alia* her having filed an in-house discrimination complaint regarding systemic sexual harassment.

19. As a proximate result of Defendants' conduct, Plaintiff has been forced to suffer: violation of her Fourth Amendment rights; violation of her First Amendment rights; violation of her Fourteenth Amendment right to Equal Protection; Title VII retaliation; emotional upset; anxiety; public humiliation; public shame; public embarrassment; public degradation, and has otherwise been rendered sick and sore.

**AS AND FOR A FIRST CLAIM**
**AGAINST THE AUTHORITY**

20. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "19", inclusive.

21. Under the premises Defendants' subjection of Plaintiff to retaliatory non-random drug testing violated her rights as guaranteed by Title VII, 42 U.S.C. §2000e *et. seq.*

**AS AND FOR A SECOND CLAIM**
**AGAINST THE INDIVIDUALLY**
**NAMED DEFENDANTS**

22. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "19", inclusive.

23. Under the premises Defendants' subjection of Plaintiff to retaliatory non-

random drug testing violated her rights as guaranteed by the Fourth Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A THIRD CLAIM
## AGAINST THE INDIVIDUALLY
## NAMED DEFENDANTS

24. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1' to "19", inclusive.

25. Under the premises Defendants' subjection of Plaintiff to drug testing by reason of her gender and/or constitutionally protected speech violated her rights as guaranteed by the Equal Protection Clause of the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A FOURTH CLAIM
## AGAINST THE AUTHORITY

26. Repeats and realleges as if fully set forth the allegations of fact contained in paragraph "11".

27. Under the premises the Authority violated Plaintiff's rights as guaranteed by Title VII, 42 U.S.C. §2000e *et. seq.*

## AS AND FOR A FIFTH CLAIM
## AGAINST THE INDIVIDUALLY
## NAMED DEFENDANTS

28. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "19", inclusive.

29. Under the premises Defendants' conduct violated Plaintiff's rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

### AS AND FOR A SIXTH CLAIM AGAINST THE INDIVIDUALLY NAMED DEFENDANTS

30. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "19", inclusive.

31. Under the premises the individually named Defendants, acting as aiders and abettors, violated Plaintiff's rights as guaranteed by Section 296 *et. seq* of the New York State Executive Law.

WHEREFORE a judgment is respectfully demanded:

 a. Awarding against the individually named Defendants with respect to the Second, Third, and Fifth Claims such punitive damages as the jury may impose,

 b. Awarding against the Authority with respect to the First and Fourth Claims, such compensatory damages as the jury may determine,

 c. Awarding against the individually named Defendants with respect to the Second, Third and Fifth Claims such compensatory damages as the jury may determine,

 d. Awarding on the First, Second, Third, Fourth and Fifth Claims reasonable attorney's fees and costs, and,

e.  Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
August 19, 2008

LOVETT & GOULD, LLP
By: _____
Jonathan Lovett (4854)
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401

*No Summons Issued*

*ORIGINAL*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JULIA BASILE,

                      Plaintiff,

       -against-

WALTER SPAGNOLA, individually,
DONNY ESCHRICH, individually,
KEVIN DELOWE, individually,
RICHARD IUELE, individually,
RAMESH MEHTA, individually,
and NEW YORK STATE THRUWAY
AUTHORITY,

                     Defendants.
-----------------------------------------------------------x

07 Civ.11247 (CLB/LMS)

**FIRST AMENDED
COMPLAINT**

**Jury Trial Demanded**

U.S. DISTRICT COURT
FILED
FEB 25 2008
S.D. OF N.Y.
W.P.

       Plaintiff JULIA BASILE, by her attorneys Lovett & Gould, LLP, for

her first amended complaint respectfully alleges:

### NATURE OF THE ACTION

       1. This is an action for compensatory and punitive damages, proximately

resulting from Defendants' conduct engaged in while acting in concert and under

color of New York State law, that violated Plaintiffs rights as guaranteed her by

reason of 42 U.S.C. § 1985(2), 42 U.S.C. §1983, Title VII, 42 U.S.C. §2000e

*et . seq.*, and Section 296 *et. seq* of the New York State Executive Law.

### JURISDICTION

       2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

On February 2, 2005, Plaintiff duly filed a Charge of Discrimination (#165200500490)

premised upon gender with the United States Equal Employment Opportunity

Commission. A Notice of Right to Sue was thereafter issued by the United States
Department of Justice on November 29, 2005. Since this action alleges retaliation by
reason of Plaintiff's having previously filed an EEOC charge, received a Notice of Right
to Sue, and prosecuted that the resulting Title VII claim against the New York State
Thruway Authority, the filing of a second Charge of Discrimination and/or the receipt of
a second Notice of Right to Sue is not required as a matter of law. Williams v. New York
city Housing Authority, 458 F.3d 67, 70, ftn. 1 (2d Cir. 2006); Butts v. City of New York
Department of Housing Preservation & Development, 990 F.2d 1397, 1401-3 (2d Cir.
1993). Plaintiff's supplemental state law claim is interposed pursuant to 28 U.S.C. §1367.


### THE PARTIES

3. Plaintiff JULIA BASILE, a thirty-four year old single mother, is a citizen of the
United States, a domiciliary of the State of New York, and a resident of the County of
Rockland. At all times relevant to this complaint she has been employed by the New York
State Thruway Authority (hereinafter "Authority") since April 2003 until recently as the
only female welder assigned to work on the Tappan Zee Bridge. In 2005 she filed a Title
VII and 42 U.S.C. § 1983 civil rights action against the Authority, Defendant Spagnola
and other Authority officials/employees by reason of a gender-based hostile work
environment. Basile v. Spagnola, 05 Civ. 10699 (LMS)(hereinafter "Basile I"). As
against Defendant Spagnola the case resulted in a plaintiff's jury verdict in the Spring of
2007 in the principal sum of $200,000 - - $50,000 of which was punitive damages. In
2008 Plaintiff was forced by reason of her gender to relocate to a different work location
within the Authority to avoid her being killed by co-workers as set forth *infra*.

4. Defendant WALTER SPAGNOLA (hereinafter "Spagnola"), who is sued in his individual and personal capacities only, at all times relevant to this complaint has for years been employed by the Authority as a "Supervising Bridge Painter" assigned to the Tappan Zee Bridge (hereinafter the "Bridge"). As such, and by reason of his seniority and political connections in the Authority, he *de facto* controls: i) the on-the-job conduct and/or misconduct of many of the Authority employees assigned to the Bridge, including each of his individually named co-defendants; and ii) many of the illegal and unauthorized workplace activities on the Bridge, including the circumstances referenced *infra*. Since Plaintiff's commencement of employment Spagnola has sexually abused her and *inter alia* stalked her in the workplace. Since the verdict in <u>Basile I</u> he has re-doubled his stalking activities with respect to Plaintiff - - all with the knowing consent and/or encouragement of his co-defendants. Spagnola's conduct as alleged herein has nothing whatsoever to do with his duties and/or responsibilities as an employee of the Authority; that conduct was in fact motivated by his personal stake in illegal conduct intended to cause Plaintiff's death because: i) as a female she not only refused to accede to his personal sexual entreaties, but openly opposed that illegal conduct; ii) she filed a Charge of Discrimination with the EEOC under Title VII because of Spagnola's gender discriminatory conduct as countenanced by the Authority; iii) she received a Notice of Right to Sue, and; iv) she successfully sued him for that unlawful conduct. Prior to Plaintiff's coerced relocation as set forth *supra* she repeatedly without success implored the Authority to transfer Spagnola from the Tappan Zee Bridge to a different work location in order to afford Plaintiff as safe work environment. The Authority refused to do so, by reason of Spagnola's gender, despite the jury verdict rendered in <u>Basile I</u>.

5. Defendant DONNY ESCHRICH (hereinafter "Eschrich"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the Authority as a "Supervising Bridge Painter II", assigned to the Bridge. Eschrich, as a personal friend of Spanola and out of personal animus he harbors towards Plaintiff by reason of her gender, her opposition to Spagnola's sex-based discrimination in the workplace, her filing the said Charge of Discrimination with the EEOC, her receipt of a Notice of Right to Sue, and/or the jury verdict in Basile I , in or about August of 2007 entered in to a conspiratorial agreement (hereinafter the "conspiracy" or "plan") with Spagnola and co-defendants DeLowe, Mehta and Iuele - - known to and approved by administrators of the Authority with final, discretionary decision making authority regarding the conduct set forth *infra* - - to kill and/or cause the death of Plaintiff. Eschrich's conduct as alleged *infra* had nothing whatsoever to do with his duties and/or responsibilities as an employee of the Authority. In that connection Eschrich had a personal, not professional and/or corporate stake in causing Plaintiff's death.

7. Defendant RICHARD IUELE (hereinafter "Iuele"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the Authority as a "Bridge Maintenance Engineer", assigned to the Bridge. Iuele, also a friend of Spagnola who harbors the same animus towards Plaintiff as set forth with respect to Spagnola and Eschrich, knowingly and intentionally agreed to participate in the conspiracy in which he had the same referenced personal stake in causing Plaintiff's death.

8. Defendant KEVIN DELOWE (hereinafter "DeLowe"), who is sued in his individual and personal capacities, at all times relevant to this complaint was employed

by the Authority as a "Rigger" (whose function is *inter alia* to prepare scaffolding used in work assignments by amongst others the Plaintiff) assigned to the Bridge. DeLowe, another friend of Spanola who harbors the same animus towards Plaintiff as set forth with respect to Spagnola, Eschrich and Iuele, also knowingly and intentionally agreed to participate in the conspiracy. He also had the same referenced personal stake in causing Plaintiff's death.

9. Defendant RAMESH MEHTA (hereinafter "Mehta"), who is sued in his individual and personal capacities, at all times relevant to this complaint was employed by the Authority as the Director of the New York Region. He like his individually named co-defendants knowingly and intentionally agreed to participate in the conspiracy - - motivated by the same animus referenced *supra* and the same personal stake in causing Plaintiff's death.

10. Defendant NEW YORK STATE THRUWAY AUTHORITY (hereinafter "Authority") is a public authority created by and existing pursuant to the laws of the State of New York. As such the Authority operates/maintains the Bridge. The Authority was a named Defendant in Basile I and monitored through its counsel the trial in that action. By reason of Basile I the Authority has intentionally encouraged and condoned the individually named Defendants conspiratorial plan to retaliate against Plaintiff by reason of her: i) opposition to Spagnola's sexual entreaties; ii) filing the Charge of Discrimination with the EEOC; iii) receiving the Notice of Right to Sue; iv) prosecution of a Title VII claim against the Authority; and v) obtaining the verdict in that action.

## THE FACTS

11. In furtherance of Defendants' plan, and in connection with the first attempt by them to kill Plaintiff and/or cause her death, Defendants placed her welding truck in gear causing it to slowly roll forward on the Bridge while Plaintiff was suspended under the Bridge using a torch in connection with welding. But for the fortuitous intervention of Plaintiff's "helper", who stopped the truck and placed it in "park", the truck's motion would have severed the acetylene and oxygen lines that ran from the truck to Plaintiff's welding equipment under the Bridge causing a massive explosion and fireball with her certain resulting fatality - - along with extensive structural damage to the Bridge and/or serious physical injuries or death to motorists on the Bridge.

12. Thereafter Defendants ordered Plaintiff to perform work on a scaffolding that had been deliberately, defectively rigged (lacking "swing lows", "ties" and "clamps", leaving the scaffolding unsecured to the Bridge) with the objective of having Plaintiff plummet from the scaffolding approximately two hundred feet into the Hudson River. Fortuitously Plaintiff and her assigned co-worker noticed the defects and avoided certain serious injury or death by refusing to comply with Defendants' order. In that connection DeLowe subsequently expressly admitted to Plaintiff's co-worker that the defective rigging had been intentional and was calculated to injure the "bitch" and "break Julia's balls".

13. In a third attempt to kill and/or cause Plaintiff's death, Defendants punctured a high pressure air hose, a circumstance that was intended to cause the hose (under 1,500 pounds of pressure) to rupture when Plaintiff was using it while suspended under the Bridge. Fortuitously while Plaintiff's assigned co-worker instead began using the air hose

below the surface of the Bridge Plaintiff, on the Bridge surface, saw the line begin to

shred and shut off the compressor - - preventing a blast of pressurized air from blowing her

co-worker off of the scaffolding and into the River, where he would have certainly been

killed.

       14. By way of multiple other retaliatory attempts to sabotage Plaintiffs work

environment and cause her serious bodily injury or death Defendants have:

            a. Repeatedly tampered with her welding truck, rendering it unsafe to

              operate,

            b. Repeatedly tampered with combustible fuel tanks, required to be used

              by her in connection with welding, with a view towards causing

              them to explode, and, *inter alia,*

            c. Repeatedly tampered with her air compressor with a view towards

              causing an explosion while Plaintiff was using it.

       15. Most recently when Plaintiff's immediate supervisor confronted Eschrich

regarding the multiple attempts on Plaintiff's life and requested his active intervention to

prevent a tragedy, Eschrich responded: "She deserves whatever she gets".

       16. With respect to the sabotage and attempts on her life Plaintiff has repeatedly reported

these circumstances to the New York State Police, who have refused out of deference to the

well-established lawless behavior routinely engaged in by the Authority and its

officials/employees, to investigate and/or take any proactive law enforcement action to protect

her from the Defendants' criminal misconduct.

       17. As a proximate result of Defendants' conduct Plaintiff has been caused to: endure for

months, and continuing to date, relentless fear and terror; suffer extreme emotional upset; suffer

extreme anxiety; suffer financial damages; endure public humiliation, public degradation, public embarrassment, public ridicule, public shame; suffer on-going gender discriminatory violations of her right to Equal Protection because *inter alia* she successfully sued Spagnola for violations of her rights as guaranteed by 42 U.S.C. § 1983; suffer on-going retaliation by the Authority because in <u>Basile I</u> Plaintiff named the Authority as a defendant with respect to a Title VII claim; suffer on-going death threats and related retaliatory conduct because she testified against Spagnola and the Authority in Federal Court during her trial; to suffer denials of her right to Equal Protection by reason of her gender; suffer daily stalking, harassing and threatening behavior purposefully and openly engaged in by Spanola on the Bridge; suffer a chilling in her prospective exercise of her First Amendment rights to free speech and to petition government for the redress of grievances with respect to criminal wrongdoing engaged in by the Authority, routine on-the-job use of illicit drugs by Authority employees, routine on-the-job card playing and/or gambling by Authority employees, routine on-the-job sleeping by Authority employees, waste of public moneys by the Authority, theft of public property with impunity by employees of the Authority, and *inter alia* unsafe roadway and structural conditions on and under the Bridge that daily put motorists who use that Bridge at risk of serious injury or death ; and she has otherwise been rendered sick and sore.

## AS AND FOR A FIRST CLAIM
## AGAINST THE AUTHORITY

18. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "17", inclusive.

17. Under the premises Defendant's retaliatory conduct violated Plaintiffs rights as guaranteed her by reason of Title VII, 42 U.S.C. §2000e *et. seq.*

### AS AND FOR A SECOND CLAIM
### AGAINST THE INDIVIDUALLY
### NAMED DEFENDANTS

18. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "17", inclusive.

19. Under the premises Defendants' conduct violated Plaintiff's right to Equal Protection as guaranteed her by reason of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

### AS AND FOR A THIRD CLAIM
### AGAINST THE INDIVIDUALLY
### NAMED DEFENDANTS

20. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "17", inclusive.

21.    Under the premises Defendants conspiracy and their acts taken in furtherance of it violated Plaintiff's rights as guaranteed by 42 U.S.C. § 1985(2).

### AS AND FOR A FOURTH CLAIM
### AGAINST THE INDIVIDUALLY
### NAMED DEFENDANTS

22. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "17", inclusive.

23. Under the premises Defendants' retaliatory conduct violated Plaintiff's rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. § 1983.

## AS AND FOR A FIFTH CLAIM
## AGAINST THE INDIVIDUALLY
## NAMED DEFENDANTS

24. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "17", inclusive.

25. Under the premises Defendants violated Plaintiff's rights as guaranteed by Section 296 *et. seq* of the New York State Executive Law.

WHEREFORE judgment is respectfully demanded:

    a. Awarding on the Second, Third and Fourth Claims against the individually named Defendants such punitive damages as the jury may impose,

    b. Awarding on the First, Second, Third, Fourth and Fifth Claims as against all Defendants such compensatory damages as the jury may determine,

    c. Awarding on the First, Second, Third and Fourth claims against all Defendants costs and reasonable attorney's fees, and,

    d. Granting such other and further relief as to the Court seems just and proper.

Dated:  White Plains, N.Y.
       February 20, 2008

LOVETT & GOULD, LLP
By:_____
Jonathan Lovett (4854)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401

10